IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JEROME TOLLIVER,                    )
                                    )
            Plaintiff,              )
                                    )
      v.                            )     No. 10 C 1879
                                    )
P.O. GONZALEZ #18216, et al.,       )
                                    )
            Defendants.             )

## MEMORANDUM OPINION AND ORDER

Following the August 23, 2011 issuance of the parties'
jointly submitted Final Pretrial Order ("FPTO"), each side has
complied with this Court's contemporaneously-issued minute order
by submitting motions in limine. Those motions in turn have
generated responses, so that they are ripe for ruling. This
memorandum opinion and order will address the motions in turn.

## Plaintiff's Motions in Limine

Counsel for plaintiff Jerome Tolliver ("Tolliver") have, in
their Motion No. 1, sought to bar a substantial amount of
potential evidence that is not directly related to the incident
in which Tolliver claims his constitutional rights were violated.
None of the matters to which Tolliver objects were known to the
defendant officers at the time of their alleged use of excessive
force in the course of their arresting him. That familiar type
of motion typically brings into play the interaction between Fed.
R. Civ. P. ("Rule") 404(b) and Rule 403, and this case is no
exception.

Among the objected-to items, the exclusion of any potential
evidence as to Tolliver's prior arrests not leading to
convictions and as to any history of domestic disputes (the
latter exclusion being unopposed by defendants) poses no
problems--any such matters are barred.  As for Tolliver's earlier
or later use of controlled substances, with no evidence
indicating that he was impaired at the time of his arrest (so as
to raise a question as to his ability to recall the incident),
any such evidence is barred as well.

That leaves only Tolliver's 2006 convictions for aggravated
battery and his 2008 conviction for attempted robbery.  Though
such prior convictions are potentially admissible under Rule 609,
neither implicates Tolliver's credibility as such.  With none of
them having been known to the arresting officers at the time of
the incident at issue, they could not have influenced the
officers' conduct.  On balance, the introduction of such
unrelated convictions, none of which impugns Tolliver's ability
to speak truthfully about the incident on which he sues, would
generate unfair prejudice substantially outweighing their
probative value.  That being so, Rule 403 bars admissibility of
that evidence, and Tolliver's Motion No. 1 is granted in its
entirety.

Tolliver's Motion No. 2 seeks to bar evidence of defendant
Officer Gonzalez's National Guard service from about 1997 to

2004. Defendants' response is that it should be admitted "for the purpose of providing background information to the jury." "Background information" of what? Any such evidence has no relevance to the matters at issue, and Motion No. 2 is granted as well.

Tolliver's Motion No. 3 asks that the defendant officers be prevented from wearing their uniforms and medals during the trial, on the premise that doing so would constitute inadmissible character evidence. That may be so as to medals, but the defendant officers have disclaimed any intention to wear those.[1] But this Court sees no basis for precluding the wearing of uniforms (indeed, this Court is keenly aware that some members of the public view police officers adversely as a result of some highly publicized incidents of misconduct, and it always takes special care to make inquiry on both sides of the potential bias coin during voir dire in jury selection). That aspect of Motion No. 3 is denied.

Finally, Tolliver's Motion No. 4 asks that the trial omit any reference to or mention of the details surrounding Tolliver's arrest--most particularly any details of the altercation between Tolliver and his spouse Stacey that triggered the arrest.

_____

[1] Defendants' response does indicate an intention to wear Chicago Police Department ("Department") color bars, a term with which this Court probably should be but is not familiar. Pending explanation of that term, no ruling is made here.

Defendants state in return that the "officers came to the scene of the incident in response to a dispatch regarding a domestic dispute between Plaintiff and his wife," assertedly justifying testimony of the type objected to by Tolliver (most specifically, referring to marks that the officers observed on Mrs. Tolliver when they arrived).

What would not of course be appropriate for jury consideration would be any notion that a physical altercation between the Tollivers before the officers arrived would somehow justify them in the imposition of excessive force on Tolliver (on some notion that he deserved what he got). If Tolliver's counsel is correct in asserting that "[t]here is no dispute between the parties that Mr. Tolliver's arrest occurred without incident and that he was cooperative and was not resisting" (Motion at 9), the exclusion of the potentially prejudicial evidence is appropriate as a matter of Rule 403 balancing (none of the cases advanced in defendants' Response at 7-8 calls for a contrary conclusion). If then the proof at trial bears out the statement quoted above from Tolliver's submission, it is granted.

Defendants' Motions in Limine

After the entry of the FPTO, the parties' counsel conferred about a good many of defendants' motions in limine and reached agreements that obviated the need for further briefing. Here then is a list of those motions, to the granting of which the

parties have stipulated:

1. Motion No. 1, barring any evidence of Department's general orders, rules and regulations;

2. Motion No. 3, barring any mention that defense counsel work on behalf of City;

3. Motion No. 4, barring any evidence regarding a "code of silence" or arguing that police generally protect or cover up for other officers' misconduct;

4. Motion No. 5, barring any testimony, evidence, argument or comments about other events concerning allegations of police misconduct;

5. Motion No. 6, barring all nonparty witnesses from the courtroom during opening statements and trial testimony;

6. Motion No. 7, barring any reference to "sending a message to City";

7. Motion No. 8, barring any evidence, testimony or argument as to any complaints listed on defendant officers' Complaint Register ("CR") histories, the CRs themselves and the underlying CR file in this action and in any prior lawsuits;

8. Motion No. 9, barring any of Tolliver's counsel from making an improper opening statement;

9. Motion No. 10, barring any Tolliver counsel from making an improper opening statement that defendant officers

conducted an improper investigation;

10. Motion No. 11, barring any evidence or argument as to defendants' alleged failure to call witnesses;

11. Motion No. 12, barring any mention or arguments during jury selection that would condition the jury to award a specific amount of money damages; and

12. Motion No. 13, barring any evidence, testimony or arguments as to Tolliver's having made a citizen's complaint to Department or the Independent Police Review Authority.

That leaves as a contested matter only defendants' Motion No. 2, which seeks (1) to bar any mention of indemnity by the City of Chicago ("City") and (2) to strike City's name from the case caption. Both facets of that motion stem from an understandable concern that a jury ruling for Tolliver might be inclined to return a verdict awarding excessive damages because of the notion that City's deep pocket is available to satisfy the award.[2]

All of us are familiar with the practice of withholding from juries information about defendants' insurance coverage for just that reason. It must be recognized, though, that such a rule is unrealistic, for example, at least in lawsuits involving motor

---

[2] In a sense, current events render any such concern unrealistic as to any reasonably well informed person. City's economic woes are widely known, and it is entirely possible that jurors could be less inclined to tap into City's version of Mother Hubbard's Cupboard.

6

vehicle accidents because of the pretty much universal knowledge of legally compelled insurance coverage. There clearly is no such public awareness of a municipality's indemnification obligation.

But there is a corresponding danger that a jury, uninformed about any right of indemnification and aware of the comparatively modest income of police officers, could be inclined to lowball a damage award because of that awareness. In this Court's view, arrived at with a good deal of thought over a substantial period of years, the solution that is most fair to both sides is to apprise the jury of City's obligation to make good on compensatory damage awards against its officers, coupled with a strongly worded cautionary instruction that no consideration of that fact is permitted to enter into the jury's determination of reasonable damages based on the court's customary damages instruction.[3]

_____
Milton I. Shadur
Senior United States District Judge

Date: October 31, 2011

_____

[3] If a plaintiff seeks punitive damages, the jury is always instructed that no such award is permissible against a municipality (City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981)). In that situation, it is even more important that the jury be apprised of the different rule as to compensatory damages.